**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RAJIV SHAH GOSAIN, | |
| *Plaintiff*, | |
| v. | Civil Action No. 18-2427 (TJK) |
| REPUBLIC OF INDIA et al., | |
| *Defendants*. | |

**MEMORANDUM OPINION**

This case is the latest installment of a long-running dispute between the American owner of an Indian company and the Indian government that stems from the company's bankruptcy proceedings in India over 20 years ago.  The owner, Rajiv Shah Gosain, sued Defendants—the Republic of India and several components of the Indian government—for fraud, conspiracy, and breach of fiduciary duty under the Foreign Sovereign Immunities Act, or FSIA, 28 U.S.C. §§ 1602 *et seq*.  Defendants move to dismiss.  They argue that the Court lacks personal and subject-matter jurisdiction over them under the FSIA, that the complaint fails to state a claim, and that under the doctrine of *forum non conveniens* the litigation should proceed in India.  The Court agrees that it lacks personal jurisdiction over Defendants because Gosain has not properly served them, so it will allow Gosain limited additional time to perfect service.  The Court leaves for another day Defendants' other threshold challenges, in the hope that better briefing from the parties will help the Court resolve them if Defendants are properly served and then renew their motion to dismiss.

I.      **Background**

      A.      **Factual Background**

Gosain alleges in the amended complaint that he was the sole shareholder of TechInvest India Private, Ltd., an Indian-incorporated company that manufactured insulating materials for

power generation and transmission.  ECF No. 26 ¶ 10.  In 1999, a creditor of TechInvest brought a "winding up" petition (akin to an involuntary bankruptcy proceeding) against it.  *Id.* ¶ 11.  An Official Liquidator, appointed by the Indian government, was tasked with overseeing the proceedings.  *Id.*  Gosain, a United States citizen, alleges that in 2001 he entered an agreement with the superintendent of the Official Liquidator to litigate all claims arising from the winding up proceedings in "American Courts only."  ECF No. 26-1 at 3.  Gosain and the superintendent entered into this agreement, he alleges, so that Gosain would not "contest [the Official Liquidator's] appointment and activities in Indian Courts."  ECF No. 26 ¶ 11.  In exchange for not contesting the Official Liquidator's actions in Indian courts, Gosain alleges, the superintendent of the Official Liquidator agreed to waive its sovereign immunity from suit in the United States.  *Id.* ¶ 13.

Ultimately, though, it appears that Gosain did not keep up his end of the deal.  When the winding up process concluded, Gosain sued in India to challenge the Official Liquidator's actions.  ECF No. 26 ¶ 17.  He alleges that the Official Liquidator rigged the winding up process in the favor of another company, which obtained an illegitimate valuation of TechInvest's assets at far below their worth, then sold those assets to a rival company "for a fraction of their market value."  *Id.* ¶ 15.  Gosain further alleges that "[a] portion of the proceeds of the auction has been put to the use of the Official Liquidator or in the budget of the Republic of India."  *Id.* ¶ 16.  Gosain's suit reached the Supreme Court of India, which ruled that the auction of TechInvest's assets "had been irretrievably and illegal [sic] tainted by fraud and favoritism."  *Id.*; *see* ECF No. 26-2.  Thus, the Supreme Court of India "vitiated" the auction and "ordered the Official Liquidator to immediately recover TechInvest's assets."  ECF No. 26 ¶ 17.  Still, Gosain alleges that the Official Liquidator has represented that "it is not able to recover TechInvest's assets because they have been dissipated, stolen, or embezzled" by the company that bought them at auction.  *Id.* ¶ 18.

### B.    Procedural History

In August 2018, Gosain sued the Republic of India, the Indian Ministry of Corporate Affairs, and the Office of the Official Liquidator in the Southern District of New York.  ECF No. 1. The case was then transferred here.  ECF No. 18.  Following transfer, the Court noted that "the docket d[id] not reflect that [Gosain] ha[d] made any attempts to serve Defendants."  Minute Order of December 17, 2018.  So it ordered Gosain to file either proof of service or a status report about service by January 4, 2019.  *Id.*  Following various delays, in April 2020, Gosain amended his complaint and added the Indian Ministry of Law and Justice as a defendant, ECF No. 26, and then represented that he had served Defendants on January 31, 2020, ECF No. 33 ¶ 10.  In his amended complaint, Gosain alleges that the Official Liquidator committed fraud, made false statements to him, and breached its fiduciary duties to him.  ECF No. 26 ¶¶ 19–28.  He also alleges that, in conspiracy with another company, the Official Liquidator "illegally deprive[d]" him of the fair market value of TechInvest's assets.  *Id.* ¶ 30.  Gosain alleges that the Court has jurisdiction over Defendants—all components of the Indian government that could usually claim sovereign immunity—under the FSIA, based on his agreement with the superintendent of the Official Liquidator (which he construes as a waiver of sovereign immunity) and the Official Liquidator's alleged expropriation of his property.  *Id.* ¶ 2.

In August 2020, eight months after he purportedly served Defendants, Gosain filed an Affidavit in Support of Default.  ECF No. 34.  In September 2020, the Clerk entered default against Defendants.  ECF No. 37.  After the entry of default, Gosain moved three times for default judgment, each time unsuccessfully.  *See* ECF Nos. 38, 46, 53, 58; *see also* Minute Order of July 8, 2021, Minute Order of April 5, 2024.

In May 2024, Defendants entered an appearance for the first time.  ECF Nos. 68–70.  Defendants then moved to set aside the clerk's entry of default, which the Court granted.  ECF No. 77.

In its Memorandum Order, the Court noted that default was not warranted because, among several reasons, "the record [did] not show that Defendants were properly served." *Id.* at 3.

Defendants now move to dismiss under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and based on the doctrine of *forum non conveniens*. *See* ECF No. 80. They argue that Defendants' sovereign immunity bars suit because Gosain's agreement with the superintendent of the Official Liquidator was not a valid waiver of sovereign immunity and because the FSIA's expropriation exception does not apply. They also argue that the Court lacks personal jurisdiction over Defendants, that the complaint fails to state a claim, and that the Court should decline jurisdiction under the doctrine of *forum non conveniens* in favor of litigation in India. *See generally* ECF No. 80-1. For the reasons explained below, the Court agrees that it lacks personal jurisdiction over Defendants because they have not been properly served.

**II.    Legal Standard**

Under Rule 12(b)(2), a party may move to dismiss an action when the court lacks personal jurisdiction. "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant." *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)). "Personal jurisdiction exists under § 1330(b) of the FSIA when an immunity exception applies and service is proper." *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 237 (2025). Service under the FSIA is laid out in the hierarchical provisions of 28 U.S.C. § 1608, and proper service under that statute is the sole way for a court to have personal jurisdiction over a foreign defendant. *See I.T. Consultants, Inc. v. Republic of Pakistan*, 351 F.3d 1184, 1191 (D.C. Cir. 2003). The FSIA's service rules "demand[] adherence." *Republic of Sudan v. Harrison*, 587 U.S. 1, 19 (2019).

**III.    Analysis**

In support of their contention that the Court lacks personal jurisdiction over them, Defendants argue both that Gosain failed to properly serve them and that no exception to their sovereign immunity under the FSIA applies.  ECF No. 80-1 at 23–24.  The Court need only address the first to conclude that it lacks personal jurisdiction over them.

Section 1608(a) governs service on foreign sovereigns under the FSIA.  Because India and the United States have no "special arrangement for service" between them under § 1608(a)(1), Gosain was next required to try to serve India under § 1608(a)(2).  Under that section, service may be perfected "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(2).  The parties agree that the applicable internation convention is the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention"), *opened for signature* Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

Gosain says that he effectuated service under the Hague Service Convention, but he has failed to show that he did so successfully.  He contends that he did so by mailing documents to "the Ministry of Law and Justice, the Central Authority designated by the Republic of India to receive service of process."  ECF No. 82 at 3.  But "Articles 2 to 6 of the Hague Convention require that a plaintiff request service from a Central Authority designated by the receiving state *and receive a certificate of service from the Central Authority*" stating that service was proper.  *Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1038 (D.C. Cir. 2022) (emphasis added); *see also Water Splash, Inc. v. Menon*, 581 U.S. 271, 275 (2017).  Merely requesting service from the foreign country's Central Authority—without receiving a certificate of service—is not valid service.  *Saint-Gobain*, 23 F.4th at 1041–42.  Gosain concedes that

5

he did not receive a certificate of service from India's Ministry of Law and Justice.  ECF No. 82 at 3.  That dooms his service argument, full stop.

Still, Gosain offers two reasons why his attempt at service was valid, but neither can repair this critical defect.

First, Gosain points to Article 15(2) of the Hague Service Convention, which allows for a default judgment to be entered when a plaintiff has (1) "transmitted [the required documents] by one of the methods provided for in this Convention," (2) waited at least six months, and (3) failed to receive a "certificate of any kind . . . even though every reasonable effort has been made to obtain it."  Gosain asserts that he transmitted service documents to India's Central Authority, failed to receive a certificate of service despite his best efforts, and waited over six months.  ECF No. 82 at 3–4.  So, he argues, he has properly served Defendants according to an alternate method proscribed by the Hague Service Convention.  *Id.* at 4.

Not so.  Articles 15(1) and 15(2) govern the process for obtaining a *default judgment*, but as Defendants rightly point out, that standard has nothing to do with resolving a challenge to the Court's exercise of personal jurisdiction—or more specifically, determining whether service was valid.  That Article 15 is irrelevant here is underscored by its requirement that a defendant "not [have] appeared" before it kicks in.  Hague Service Convention, Art. 15(1); *see also e360 Insight v. Spamhaus Project*, 500 F.3d 594, 600 n.4 (7th Cir. 2007).  In contrast, of course, Defendants have "entered a limited appearance" in this case.  ECF No. 80-1 at 13.

Second, Gosain argues that actual notice of the suit can satisfy proof of service against a foreign sovereign under the Hague Service Convention and the FSIA.  ECF No. 82 at 5.  Because Defendants have appeared and have actual notice, he argues, the Court may find that they were properly served.  ECF No. 82 at 6–7.  He cites out-of-circuit authority for this proposition,

6

including *Box v. Dallas Mexican Consulate General*, 487 F. App'x 880, 886 (5th Cir. 2012) and *Burda Media, Inc. v. Viertel,* 417 F.3d 292, 301 (2d Cir. 2005).

This argument also fails. For one thing, it is flatly contradicted by the D.C. Circuit's holding in *Saint-Gobain* that, based on its "plain text," the Hague Service Convention requires the receipt of a certificate from the receiving authority for service to be proper. 23 F.4th at 1042.[1] For another, as the D.C. Circuit noted in *Saint-Gobain*, the Fifth Circuit in *Box* was weighing the issue of service of process in the context of a motion for default judgment under Article 15, which is inapplicable here. *Id.* at 1041–42 (citing *Box*, 487 F. App'x at 886). The same is true for other authority Gosain relies on. *See Scheck v. Republic of Argentina*, No. 10-cv-5167, 2011 WL 2118795, at *4 (S.D.N.Y. May 23, 2011).[2] Moreover, all the cases Gosain cites were decided before the Supreme Court's admonition in *Harrison* that the "strict requirements" of the FSIA's service provisions "demand[] adherence." 587 U.S. at 19. Simply put, the Court cannot deviate from the requirements of the Hague Service Convention and the FSIA in the way Gosain would like. *See Watch Tower Bible & Tract Soc'y of Penn. v. Russian Federation*, 804 F. Supp. 3d 153,

---

[1] Gosain also argues that *Saint-Gobain* "simply does not apply here" because the plaintiff in that case unsuccessfully attempted to rely on Article 15(1)'s default judgment provisions. ECF No. 82 at 7. Far from it. *Saint-Gobain*—as opposed to the authority Gosain relies on—is binding on this Court, and it is directly on point. In that case, the sovereign defendant moved to dismiss the underlying case for lack of personal jurisdiction. *Saint-Gobain*, 23 F.4th at 1040. The district court relied on out-of-circuit authority (including *Box*) to conclude that service was proper under the Hague Service Convention even though the plaintiff did not receive a certificate of service. *Id.* The Circuit reversed and remanded, holding that receipt of such a certificate is required under the Hague Service Convention. *Id.* at 1042.

[2] The other circuit case Gosain cites addresses service on private individuals or corporations residing abroad rather than sovereigns, which is irrelevant to whether service was proper under the FSIA's framework. *Burda*, 417 F.3d at 295.

165 (D.D.C. 2025) ("As a general principle, district courts cannot circumvent the Hague Convention at whim." (internal quotations omitted)).

## IV.    Conclusion

For all the above reasons, Gosain has not established that he has properly served Defendants under the Hague Service Convention, and so the Court lacks personal jurisdiction over Defendants.  That said, for efficiency's sake, the Court will deny Defendants' Motion to Dismiss without prejudice and allow Gosain a limited time to perfect service, rather than dismiss.[3]  *See Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 29–30 (D.C. Cir. 2015).  A separate order shall issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: March 19, 2026

---

[3] It might also have been more efficient for the Court to have addressed some of Defendants' other threshold arguments for dismissal now, since they might have fully resolved the case. *See* ECF No. 80-1 at 14–23 (arguing this Court lacks subject-matter jurisdiction under the FSIA), 33–36 (arguing the doctrine of *forum non conveniens* bars suit).  But the Court found the parties' briefing lacking on them, so it determined that the better course was not to do so at this time.  With respect to whether an exception to Defendants' sovereign immunity under the FSIA applies, Defendants bear the burden to show that Gosain's identified exception does not apply. *Transamerican S.S. Corp. v. Somali Democratic Republic*, 767 F.2d 998, 1002 (D.C. Cir. 1985).  Still, the D.C. Circuit has instructed that in resolving any disputed issues of fact underpinning an immunity argument, the Court "must give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000) (internal citation omitted).  And neither party provided much for the Court to go on to resolve the disputed issue—part of which is factual—of whether under Indian law, the superintendent of the Official Liquidator had the actual or apparent authority to waive Defendants' sovereign immunity.  Moreover, with respect to Defendants' invocation of the *forum non conveniens* doctrine, the parties' factual representations are murky on the threshold question of "whether there exists an alternative forum" for Gosain's claims. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981).  Defendants do not say whether they are "amenable to process" in their home jurisdiction, a question the Court must resolve to proceed further in the *forum non conveniens* analysis. *Id.* (internal quotation marks omitted).  And Gosain, for his part, somehow did not address the *forum non conveniens* issue at all.